216 N.J. Super. 226 (1986)
523 A.2d 281
GLADYS RODRIGUEZ, PLAINTIFF,
v.
CARDONA TRAVEL BUREAU, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County, Special Civil Part, Division of Small Claims.
Decided December 11, 1986.
*227 Robert Machi (pursuant to R. 1:21-3[b]) for plaintiff (Hiram Lopez Nater, Essex-Newark Legal Services, attorney).
Jacinto Cardona for defendant.
FAST, J.S.C.
This case involves the legal issue of the liability of an independent travel agent to his client when the charter air carrier selected by the agent becomes insolvent. The fact pattern is simple. Jacinto Cardona is president of defendant company; he is an independent travel agent. Plaintiff Gladys Rodriguez, wishing to fly to and from Puerto Rico with her four children, requested defendant's services in arranging the airline accommodations. He arranged the requested round-trip reservations for her on a charter air carrier, and she paid him $811 for the tickets. He received his commission, about 5%, from that sum. Plaintiff and her children flew to Puerto Rico without incident. When they went to the airport for their return trip, they found that the air carrier "went out of business and closed their doors." She bought a new set of return tickets for herself and her four children for $996.60 on another airline. Plaintiff sued defendant for $996.60.
The life of the law is not logic, but experience and justice. Cf. Holmes, The Common Law, 1, 244. Logic, experience and justice dictate liability here based on the duty of an agent to his principal.
Plaintiff, in soliciting the services of defendant travel agent, put herself in his hands for a particular purpose. She relied on him to obtain round-trip tickets for her. There was no testimony that she imposed any restrictions or conditions on him. He *228 was free to select the airline which he thought would best suit his principal's requirements, or for such reasons as he may have thought proper, to decline the agency. However, in undertaking the agency, he became a fiduciary and therefore owed his principal the highest duty. There was no testimony of the efforts made to assure the performance of his undertaking, and no testimony that the agent advised his principal of any risks to be undertaken by the principal attributable to the agent's performance. In fact, defendant testified that he explained that it was a charter airline, at a low fare for that season, but that he did not explain the hazards of contracting with a charter carrier "because I didn't expect it to go bankrupt." The consequence is that the agent subjected his principal to the risks of a charter carrier, rather than a scheduled air carrier, without an explanation of the hazards. Likewise, there was no testimony that the agent advised his principal of any way to avoid, or insure against the risks of contracting with a charter carrier, such as trip cancellation insurance, which is available at a nominal cost to cover such hazards. In this instance, defendant-agent did not suggest to plaintiff that such insurance was available.
The travel agent received a commission from the transaction with the traveler. This benefit gave rise to a legal duty owed by the travel agent to the traveler. It is immaterial who pays the commission to the agent; it could be the traveler or the carrier. Regardless of who pays this commission, it remains true that "[t]he pecuniary benefit bestowed on defendant by plaintiff forms the basis of a legal duty." Josephs v. Fuller, 186 N.J. Super. 47, 51 (Cty.D.Ct. 1982).
An independent travel agent, such as defendant, is an "agent" of the traveler who solicits his services. With reference to the traveler, the independent agent has an unwavering obligation in selecting the accommodations. With reference to the air carrier, the travel agent is a broker because the agent is able to obtain seats on any airline that suits his principal's requirements.
*229 The cases of E.A. McQuade Travel Agency v. Domeck, 190 So.2d 3 (Fla.Sup.Ct. 1966) and Unger v. Travel Arrangements, Inc., 25 A.D.2d 40, 266 N.Y.S.2d 715 (App.Div. 1966), both cited in Josephs v. Fuller, supra, were decided on a different basis than this case. In both cases, the courts considered the issue of undisclosed principal. [In both cases, the travel agents-defendants were found to be agents of the same cruise line.] That difference highlights the basis for the finding in this case, to wit, that defendant was the agent of plaintiff rather than of the charter air line. His primary duty therefore was to plaintiff, rather than to the charter air line.
In Sobotor v. Prudential Property etc., 200 N.J. Super. 333 (App.Div. 1984) in a discussion of the duty of care owed by an insurance broker to a client the court noted that "[w]e see no reason why the duty owed by a broker to a client should differ from the duty owed by an agent. The difference between a broker and an agent lies in the duties and responsibilities owed to the insurance carrier, not the insured." Id. at 337, n. 1. The analogy between an independent insurance broker and an independent travel agent is striking in most instances. Customarily, the principal relies on the agent, as here, without limitation, restriction or condition in the contemplation that the agent will properly represent the principal.
Those who hold themselves out to the public as travel agents are required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain travel arrangements, the law holds a travel agent to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. They are expected to possess reasonable knowledge of the types of carriers, lines and accommodations that they select for their principals, and all significant attendant matters. If the agent neglects to procure travel arrangements, or if the arrangements fail in a manner which the travel agent should have foreseen but didn't as a result of his or her failure to exercise the requisite skill or diligence, the agent becomes liable to the traveler for the loss sustained *230 thereby. Cf. Rider v. Lynch, 42 N.J. 465, 476 (1964); Sobotor v. Prudential Property, supra.
Similarly, see Paris of Wayne v. Richard A. Hajjar Agency, 174 N.J. Super. 310 (App.Div., 1980). In that case, a real estate broker was held liable to its client, a clothing manufacturer, because the broker had been instrumental in the manufacturer becoming a tenant in a zone which prohibited manufacturing. The manufacturer-principal lost significant time from its inability to use the space for the intended purpose, and the broker was held liable for the resulting damages. That case cited Poniatowski v. Griffiths & Cinkowski, 91 N.J.L. 663 (E. & A., 1918) which said:
... the law is that men who undertake to do a service for another, in a business or professional capacity, like real estate agents, and the like, undertake to use the reasonable skill which is ordinarily possessed by their fellows in like service, nothing more and nothing less; if they fail in the performance of that duty, they are responsible to the injured person, to the extent of the damages that either naturally flow from the wrongful act and are a direct consequence of it, or of those results, those consequences, which are in contemplation of the parties at the time the service is undertaken. [at 665; emphasis supplied]
Another case cited in Paris of Wayne, supra, is Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J. Super. 282 (App.Div. 1979) which was quoted as saying:
... In light of his holding himself out as a specialist in his field of endeavor, a broker's failure to exercise reasonable skill, care and diligence in performing his undertaking will subject him to any resulting damages either for breach of contract or in tort for negligence or breach of his fiduciary duty, as the facts may warrant. [at 286-287]
Accordingly and by analogy, we hold that an independent travel agent has a duty to the traveler which is independent of the relationship between that travel agent and the carrier. With respect to the traveler, an independent travel agent functions as an agent, and agency rules and principles control.
Sound policy underscores this decision. The very purpose in dealing with an independent travel agent is to make certain that services which are paid for are in fact delivered. Dickerson, Travel Law, § 5.05[1] (1981). In many travel cases courts are faced with deciding which of two innocent parties should bear *231 the burden of another party's (i.e., the charter carrier's) default. As between the traveler and the travel agent, the latter is in a far better position to verify and establish the reliability and integrity of suppliers, wholesalers and tour operators. Id. at § 5.05[4]. Travel agents should be held to a duty to investigate and ascertain the reliability of suppliers, tour operators and wholesalers which they recommend to their principals. Id. at § 5.05[3]. The client places himself in the hands of that agent, and relies on that agent, as did Rodriguez.
Judgment will be entered for plaintiff for the amount required to be paid by her as a result of the failure of the accommodations obtained for her by her agent, in the sum of $996.60, plus costs.