**Tuohey v. Trans National Travel Inc.**

*Leonard B. Edelstein,* for plaintiff.
*Louis Aurely, III,* for defendants.

FORER, *J.,* June 22, 1987 .— Plaintiff, Regina Tuohey, sued her travel agent and the company that packaged a tour she took in February, 1983. Following a one day bench trial on November 7, 1986, this court found in favor of plaintiff, and awarded special damages in the amount of $2,262.32 and general damages in the amount of $25,000. With the consent of the parties both defendants were represent-

ed by the same counsel, who claimed that there was no conflict between them. Accordingly, the court treated both as one. Defendants' timely motions for post trial relief, including judgment N.O.V., a new trial or a remittitur of damages were denied.

Plaintiff, who had never been out of the country before, requested defendant, Fran Cohen, a travel agent trading as Discount Travel International, to arrange a one week vacation. Cohen recommended a package trip to St. Maarten, Dutch Antilles. Cohen had received information about a group discount trip from defendant Trans National Travel Corp., a tour operator in Boston with which Cohen regularly dealt. Without making any independent investigation Cohen booked plaintiff on the tour which included airfare, accommodations at the Tradewinds Hotel, baggage handling, and all ground transportation.

A year prior to the trip, plaintiff had undergone a lumbar laminectomy. Plaintiff told Cohen she wanted a rest to recuperate after working a full year following her back surgery. Plaintiff stressed to Cohen the need for a relaxed trip and also the fact that she would be traveling alone.

Upon arriving in St. Maarten, plaintiff was transported by bus to the Cupecoy Hotel. However there was no transportation available from the Cupecoy Hotel to the Tradewinds and no one to carry her three pieces of luggage. After waiting one and one-quarter to one and one-half hours outside the Cupecoy, plaintiff and others on the trip were led to the Tradewinds Hotel, by a person who was apparently a hotel employee but not a tour host or guide. A fellow tourist carried one of plaintiff's suitcases, but plaintiff was obliged to carry her other two pieces of luggage to the Tradewinds Hotel. Plaintiff testified that the walk from the Cupecoy to the

Tradewinds was up a steep hill along a narrow dirt road and took about 25 to 30 minutes. During this walk she was bitten by large red insects that caused itching and left numerous red welts on her legs.

When plaintiff arrived at the Tradewinds, she discovered that it was still under construction. Contrary to the information she had been given, the hotel did not have a lobby, pool, casino, or restaurant. She was first escorted to an unfinished room with no electricity. She was then taken to her room which did not have air conditioning or telephone service. After learning that there were no finished rooms at the Tradewinds, plaintiff traversed the same pathway down the hill to the Cupecoy Hotel to find an acceptable room. The manager of the Cupecoy informed her that no rooms were available. Plaintiff did not know that the Tradewinds Hotel was a part of the Cupecoy enterprise. Plaintiff then walked back up to the Tradewinds and spent the balance of the night in the uncompleted room to which she had been assigned.

The next morning before 7:00 a.m. plaintiff walked back to the Cupecoy Hotel and began to bribe the desk clerks, maids and managers at the Cupecoy in an attempt to procure a room there. After spending $600 cash, the entire sum she brought with her, on bribes, at around 5:00 p.m. she was finally able to obtain a room at the Cupecoy. Plaintiff had no credit cards. She made several frantic telephone calls to Philadelphia to borrow money. Plaintiff testified that the first call alone took about six hours to complete. Most of the money which was wired to plaintiff was used to pay the $473.95 bill for her food and drinks at the Cupecoy. Plaintiff testified that for the duration of the trip she suffered from red welts on her legs, back and stomach from the insect bites and that her back was bothering

her. She did not get any sun during the week since she spent most of the time in her hotel room recuperating from the insect bites. The only facilities which she used were the restaurant, bar and lobby.

Plaintiff testified that upon her return to Philadelphia she was physically and mentally exhausted and suffering from insect bites and back and leg pain. Plaintiff consulted Dr. Howard A. Miller, an internist, who testified that plaintiff had a marked narrowing of the disc spaces at C-6—C-7 and L5-S1 which he believed caused her pain. He recommended a CAT SCAN (which was negative), prescribed muscle relaxants and recommended heat pads. It was his opinion that she had aggravated her back condition as a result of the strain from carrying luggage.

Frances Cohen testified that the services she provides are not those of a travel agency but are really in the nature of a travel club. She explained that she does not recommend "anything", but rather, informs members of what trips are available. Cohen testified that she informed plaintiff that air, hotel, transfers and baggage handling were included in the trip to St. Maarten. Cohen admitted that at the time her company booked plaintiff's trip, she had no knowledge as to the completion of the Tradewinds Hotel nor did she make any inquiry as to the the accommodations at the Tradewinds. Cohen stated that she remembers that the brochure for the Tradewinds indicated there was a pool and a restaurant. Cohen testified that although she has sent other club members to St. Maarten on Trans National trips prior to plaintiff's vacation, she had no knowledge as to whether any had ever stayed at the Tradewinds.

Peggy Wiggins McHugh, manager of customer service for Trans National at the time of plaintiff's trip, testified on behalf of defendant Trans National Travel. She testified that when she was in St. Maarten in January, 1982 the Tradewinds was still under construction. McHugh returned to the Tradewinds in the middle of February of 1983 at about the time plaintiff was returning home from her vacation. McHugh admitted that there was a moderate incline up a narrow road, wide enough for only one car, which had to be walked in order to get from the street to the rooms at the Tradewinds. Although McHugh testified that all the rooms at the Tradewinds were completed, her knowledge was based on her own investigation which involved looking at only one room. She admitted that she was not aware in December of 1982 that the Tradewinds was still under construction and that Discount Travel and Trans National's other customers were not made aware of such fact. McHugh testified that Trans National relied on the hotel's representation that it would be completed by December, 1982. Although Trans National had a representative living in St. Maarten at the time, the representative never informed the company that the hotel was still under construction in February of 1983. McHugh further testified that at the time of her inspection in February of 1983, construction work was still taking place at the casino at the Tradewinds.

This court found defendants jointly and severally liable and made the following additional findings:

"(a) In this contract for a discount vacation there is an implied fitness of habitability of accommodations which would include, at a minimum, electricity and phone service.

(b) Defendants specifically breached the contract with plaintiff as to baggage handling, air con-

ditioning, and the presence of a representative of the tour company to help the tourists.

(c) No particular representations were made by defendant Cohen to the plaintiff with respect to anything at all other than the usual provisions that go with a package tour.

(d) Defendant Trans National was negligent in not investigating whether the accommodations at the Tradewinds were complete prior to notifying Cohen of the availability of the package trip.

(e) The problems that plaintiff encountered were reasonably foreseeable, and her pain, suffering and discomfort were proximately caused by the negligence of both defendants in booking her at a hotel that was not completed and which was unable to provide reasonably habitable accommodations.

(f) Plaintiff did not sustain residuals or permanent scarring.

(g) There was an exacerbation of the pre-existing back trouble, which was caused by dragging or carrying heavy suitcases.

(h) The insect bites were caused by the fact that plaintiff was not taken, as she should have been, by a conveyance to her room and that the grounds were not landscaped and walkways were not provided."

Special damages were awarded in the amount of $2,262.32 which included $600 for bribe money paid to obtain a room in the Cupecoy, $105 for three office visits to Dr. Miller following her return from the trip, $450 for a CAT SCAN, $83.90 for the charge to have money sent to her from Philadelphia, $70.75 in phone bills incurred to obtain the money, and $952.85 for the cost of the trip and for insurance. This court also awarded $25,000 for pain, suffering, annoyance and loss of what was to have been a pleasant week, and which turned out to be the op-

posite.

Defendants make the following allegations of error:

"(a) The conclusion that there is fitness of habitability for hotel accommodations.

(b) A finding that defendants were negligent.

(c) The finding that plaintiff's physical and mental injuries were caused by defendants.

(d) The general damages awarded were excessive.

(e) The special damages awarded were excessive."

## IMPLIED FITNESS OF HABITABILITY OF ACCOMMODATIONS

This court held that the contract for a package vacation impliedly warrants the habitability of accommodations provided. Defendants contend that because plaintiff never occupied the room without electricity, and that she was only without a telephone for one night, she was, in fact, provided with habitable accomodations for six of the seven nights of the trip.

Defendants did not provide plaintiff with habitable accommodations. She obtained them for herself at considerable financial and emotional cost. There can be no doubt that a resort hotel room without electricity or telephone is substandard. As for air conditioning in the Caribbean, defendants' witness, Ms. McHugh testified that all defendants' hotel properties have air conditioning.

The law is well settled that there is an implied warranty of habitability in a residential lease that the premises are free from defects that would prevent the use of the dwelling for its intended purposes. *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897

(1979); *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985); *C & B Enterprises v. Intercarbon Coal Co.,* 28 D. & C. 3d 285 (1982). In the case at bar, plaintiff was leased accommodations for a one week period at the Tradwinds Hotel. The accommodations offered her were far below the standards of the tourist industry in general and did not remotely approach the standard that had been warranted in the contract. Although this court. has found no Pennsylvania case specifically holding that there is a warranty of habitability for vacation accommodations, there is no reason to exclude vacation accommodations from the general law with respect to other properties whether purchased or leased for a long or short period of time. This is the law of those states that have ruled on the question. In *Josephs v. Fuller,* 196 N.J.Super. 47, 451 A.2d 203 (Law Div. 1982), a travel agent was held liable for the damages suffered by a traveler as a result of accommodations so totally unacceptable and below standard that any reasonable travel agent would have known not to make such arrangements.

## NEGLIGENCE

Defendants' negligence was their complete failure to investigate the accommodations at the Tradewinds Hotel prior to booking plaintiff's trip. Defendants concede that travel agents fall into the category of persons viewed by the courts as professionals who are required to exercise special care or expertise. They have considerably more expertise in making travel arrangements than ordinary lay persons.[*]

---

[*] *See* "The Liability of Travel Agents: A Study in the Selection of Appropriate Legal Principles", 40 Temple Law Quarterly 29, 34, (1966).

A travel agent owes a duty to the traveler to use reasonable efforts to insure that the accommodations which it books for the client are available. *See Slade v. Cheung and Risser Enterprises, Inc.,* 10 D. & C.3d 627 (1979) in which defendant-travel agent booked plaintiff-customer on a cruise ship simply on the basis of cruise listings and brochures, without making any inquiries as to the reliability of the operator or the availability of the cruise. The court held the travel agent responsible to the customer for the entire amount deposited when the cruise was cancelled despite the fact that the travel agent had forwarded the deposit to the operator of the cruise line which subsequently became insolvent.

The court held that a travel agent owes at least the duty to use reasonable skill and effort to ascertain and inform the customer of facts that are both relevant and crucial to him. *Citing* Restatement (Second), Agency, §§378, 379 and 381. The court also commented that if it had treated the action as being in trespass, it would have held the travel agent grossly negligent in failing to make at least some inquiry concerning the availability of the cruise ship and its financial status.

Both Cohen and McHugh admitted that no investigation or inquiry was made prior to plaintiff's arrival at the Tradewinds to find out whether suitable accommodations existed. Even though Trans National had a representative on the island, the company was apparently unaware of the fact that the hotel was not completed. In addition, Trans National did not have a tour director on the job at the resort.

Defendants were under a duty to investigate the facilities to which they book clients and were negligent in failing to do so. See also *Rodriguez v.*

*Cardona Travel Bureau,* 216 N.J.Super. 266, 523 A.2d 281 (Law Div. 1986).

Plaintiff's physical and mental injuries as well as the loss of her vacation were the proximate result of defendants' negligence in sending plaintiff to a hotel which was not completed. Defendants concede that the insect bites and the accompanying pain and annoyance were the proximate result of the condition of the hotel. Defendants argue that their negligence was not a proximate cause of plaintiff's injury to her back as neither the construction at the hotel nor the incomplete accommodations had anything to do with plaintiff carrying her luggage.

It is absolutely clear that defendants breached their contract with plaintiff by failing to provide luggage handling. This also constitutes negligence because of their failure to investigate the conditions and services at the Tradewinds. Furthermore, Trans National was negligent in failing to provide a representative to make certain that plaintiff's luggage arrived safely at the hotel room.

## REASONABLENESS OF VERDICT

It is well settled that a verdict will not be set aside unless it is so grossly excessive as to shock the court's sense of justice. *Flank v. Walker,* 398 Pa. 166, 171, 157 A.2d 163, 165 (1960); *Mineo v. Tancini,* 340 Pa. Super. 115, 502 A.2d 1300 (1986); *Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355 (1983).

Although defendants contend that plaintiff should not be reimbursed for the entire cost of the trip, they concede the fairness of the award of special damages in the amount of $2,262.32.

The undisputed testimony discloses that although plaintiff stayed only one night at the

Tradewinds Hotel, the remainder of her vacation was spent trying to obtain suitable accommodations, obtaining additional money from friends in Philadelphia, and recuperating from the numerous insect bites and back and leg discomfort sustained on the first day of the trip. Plaintiff did not have a single carefree day during the entire trip.

Defendants also maintain that the court's award of $25,000 for pain and suffering, annoyance and the loss of a vacation was excessive. Admittedly plaintiff's injuries were not serious or permanent. She is, however, entitled to reasonable compensation for those injuries and the concommitant pain and suffering. In addition, a plaintiff is entitled to recover substantial damages for mental suffering and fright when only a minor physical injury is present. *Potere v. Philadelphia,* 380 Pa. 581, 112 A.2d 100 (1955), or where there is no physical injury. *Niederman v. Brodsky,* 436 Pa. 402, 261 A.2d 84 (1970). *Murphy v. Penn Fruit Co.,* 374 Pa. Super. 427, 436, 418 A.2d 480, 485 (1980).

In the case at bar, plaintiff, a middle-aged woman, was alone in a strange country without funds. She reasonably feared she might be arrested for non-payment of the bill at the Cupecoy.

A substantial portion of the general damages was awarded for the loss of a vacation. Defendant Cohen was aware that plaintiff had back surgery a year prior to the trip, had worked for the entire year and was looking forward to a relaxing vacation. Loss of a year's vacation, long awaited and eagerly anticipated is an irreplaceable loss. That year's vacation is gone forever.

Out-of-pocket expenses is only one factor to be considered in awarding damages for emotional distress. *Stoughton v. Kinzey,* 299 Pa.Super. 499, 445 A.2d 1240 (1982); *Murphy v. Penn Fruit Co.,* supra

at 436, 418 A.2d at 485; *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super 379, 461 A.2d 362 (1976). Every aspect of the case must be examined. *Simmons v. Mullen,* 321 Pa.Super. 199, 331 A.2d 892 (1974).

On reconsideration this court finds that $25,000 verdict for general damages is fair, reasonable, and does not shock the conscience of the court. Defendants' motions for new trial and/or remittitur are denied.