[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Julie DiBiase and Samuel Magliari, allege the following facts in their amended complaint against the defendants, Oasis International Group (Oasis), James Richard doing business as South Windsor Travel (SWT), Friendly Holidays, Inc. (Friendly) and TravAmerica, Inc. (TA). The plaintiffs purchased an "all inclusive" vacation package, including hotel accommodations at the Club Oasis Akumal in Cancun, Mexico (the hotel), from SWT. SWT then arranged the trip with TA, a booking agent, and Friendly, a wholesale tour operator.
When they stepped out on the balcony of their room at Club Oasis Akumal at five o'clock on the evening of February 28, 1995, the plaintiffs expected a relaxing and scenic moment. What happened, instead, was that the balcony suddenly and without warning collapsed, pitching them 15 feet from their second floor room to the ground below. They suffered serious injuries, indeed.[1]
CT Page 12790
Oasis, the owner of the hotel, never appeared in the action and has been defaulted. SWT, the travel agency, appeared pro se and has been defaulted for failure to plead. Friendly and TA have appeared and filed motions for summary judgment, claiming that, as a matter of law, they owed no duty to the plaintiffs because the occurrence of harm to them of the general nature at issue here was not foreseeable and, in the case of TA, that the court has no personal jurisdiction over it because it is a Georgia corporation, and it lacks sufficient contacts with Connecticut to satisfy the long-arm statute[2] or the requirements of the due process clause.[3]
Thus, these motions raise an issue which has been the subject of considerable litigation nationally in the last several years and which has recently been addressed by the Appellate Court; Davies v. GeneralTours, Inc., 63 Conn. App. 17 (2001), cert. granted, 256 Conn. 926
(2001);[4] see generally, Annot., 2 ALR 5th 396 (1992); viz., what legal duty do travel professionals like Friendly and TA have to the traveling public to protect them from injury while on trips or tours arranged by or through those agencies.
What does it mean to say that a person, as a matter of law, does or does not have a duty to another to protect that person from harm? "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks and citations omitted.) Lodge v. Arett Sales Corp.,246 Conn. 563, 571 (1998). "We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." Id., 572. ". . . (T)he chief element in determining whether [a] defendant owes a duty or an obligation to [a] plaintiff is foreseeability of the risk. . . ." Clohessy v. Bachelor, 237 Conn. 31, 35 (1996).
Lodge was a case in which firefighters responding to a false alarm, negligently caused and reported by the defendant alarm company, were killed or severely injured when their fire truck crashed as a result of a brake failure, which was traceable to inadequate maintenance of the truck by their employer, the city of Waterbury. Judge Hodgson has concisely summarized the Court's approach to the determination of the alarm CT Page 12791 company's duty of care to the firefighters:
 In discussing [the foreseeability] element of the duty of care . . . the Supreme Court noted that in determining whether harm is foreseeable, the standard is whether harm of the general nature that occurred was "a reasonably foreseeable consequence of the defendants' conduct." The court stated: "[A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . . Due care is always predicated on the existing circumstances." (Citations omitted; internal quotation marks omitted.) Id. In Lodge, the court found that, as a matter of law, it was not foreseeable that when a fire alarm sounded, the firefighters would respond by driving to the scene in a truck that was known to be defectively maintained and that the defect would cause a loss of braking ability that would result in a fatal accident. The court considered the causation to be attenuated; id., 574; and deemed the risk of injury to firefighters "a harm that [the defendants] reasonably could not be expected to anticipate and over which they had no control. . . ." Id., 578. The defendants in Lodge clearly did not know about the faulty brakes or the possibility that the fire department would use a truck known to be defective, and the defendants had no control over truck maintenance or use.
Irons v. Cole, 46 Conn. Sup. 1, 9-10 (1999).
"Articulated another way, the attenuation between the plaintiffs' harm and the defendants' conduct is nothing more than a determination of whether the harm was a reasonably foreseeable consequence of the defendants' conduct. It is a well established tenet of our tort jurisprudence that due care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable." (Internal quotation marks and citations omitted.) Lodge v. Arett SalesCorp., supra, 246 Conn. 574-75. ". . . (I)f it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff".Clohessy v. Bachelor, supra, 237 Conn. 45.[5]
To determine the presence of a genuine issue of material fact whether the injuries to the plaintiffs were reasonably foreseeable by these CT Page 12792 defendants I first examine the roles of Friendly and TA an connection with the plaintiffs' trip. According to the affidavit submitted in support of Friendly's motion, it is "a wholesale tour operator which packaged vacation trips for travelers, by arranging hotel and transportation services to destination resorts", ¶ 5, and "packaged the trip to Akumal, Mexico which is the subject of this lawsuit", ¶ 6, "at the request of SWT, a travel agent acting on behalf of the plaintiffs". ¶ 7. It does not "own, manage, operate or control the hotel known as Club Akumal where the plaintiffs were injured". ¶ 9. TA, according to its affidavit, "is a travel industry company, marketing hotels in various areas of the world to tour operators and travel agents", ¶ 4, and "first became involved [in the plaintiffs' trip] after Plaintiffs selected their Hotel and after they purchased the packaged trip", serving only as a "booking agent". ¶ 6. It "has never owned, operated, controlled or managed" the hotel where the plaintiffs were injured. ¶ 7. The plaintiffs have submitted nothing to contradict these sworn claims.
The plaintiffs' fall and their injuries were obviously due to a structural defect at their hotel. So, the question is: Was it reasonably foreseeable by the tour packager, Friendly, and the booking agent, TA, that the hotel in which they had booked the plaintiffs would have a structural defect and one so serious as to cause a balcony collapse and their resultant injuries? Put this way, the question almost answers itself, in the negative. And, this is especially so in view of the information available to these defendants and the steps they took to inform themselves about the hotel in question.
Again by way of its affidavit, Friendly avers that it "booked accommodations at the Club Akumal from 1993 until 1999", ¶ 12, that, in the year preceding the plaintiffs' stay at Club Oasis Akumal, it "booked over 1,000 overnight stays at the" hotel, ¶ 15, and it "had no report of concerns or complaints regarding accomodations at the Club Akumal at any time prior to the balcony collapse which is the subject of this lawsuit". ¶ 21. In fact, customers who stayed at the Club Akumal were consistently higher in satisfaction rating than comparable accommodations". ¶ 20. Its representatives "visited [Club Akumal] and inspected [it] for suitability" at least once a year, ¶ 16, including in 1993 and 1994, ¶ 17, and "(a)t no time during either the inspection in 1993 or in 1994 was there evidence that balconies at the hotel were improperly or insufficiently constructed". ¶ 18.
TA swears that, between 1992 and 1995, it reserved "at least 9000 rooms" at the Club Oasis Akumal, that "(p)rior to the balcony collapse at issue in this case, [it] was not aware of any balcony collapse or other structural issue with respect to the integrity of the Hotel", and that CT Page 12793 its "staff, including its president (the affiant), traveled to the Hotel numerous times between 1992 and 1995. At no time were any structural irregularities reported or noticed". ¶ 9.
Again, the plaintiffs have submitted nothing to contradict these sworn statements.[6]
Based on these factors and the record here, finding that there is no genuine issue whether these defendants could have foreseen the balcony collapse is in keeping with the weight of authority in cases seeking to fasten liability for injuries to travelers on travel agents and other travel professionals. See generally, Annot., 2 A.L.R.5th 396 (1992). Other courts which have rejected similar claims have noted the tour operator's reliance on the general reputation of the hotel and the absence of complaints from guests regarding security at the hotel. See, e.g.,Wilson v. American Trans Air, Inc., 874 F.2d 386 (7th Cir. 1989); Ramagev. Forbes Intern, Inc., 987 F. Sup. 810 (C.D.Cal. 1997). Contra, Maurerv. Cerkvenik-Anderson Travel, 890 P.2d 69 (Ariz. 1994) (where plaintiff's decedent died from fall between cars of train while on student trip in Mexico, defendant agency had duty to disclose danger inasmuch as it was aware that three other students had died previously while on student tours in Mexico due to falls from moving trains).
Courts have also considered how easily obtainable was information relating to the safety defect in determining whether travel agents or tour operators were liable. See, e.g., Lavine v. General Mills, Inc.,519 F. Sup. 332 (N.D.Ga. 1981) (no duty to protect traveler from latent defects); Elsis v. TWA, Inc., 1989 N.Y.Misc. (N.Y.Sup. 1989) (tour operator could be held liable for failure to inspect ship for obvious safety defects).
Nor do any of the cases cited by the plaintiffs dissuade me from finding no duty on the part of these defendants to protect them from hidden structural defects. No case has been cited, and I have found none, where the travel agent, tour packager or booking agent has been found liable for damages from such defects. Two of the five cases relied on by the plaintiff involve a travel agent's failure to advise the traveler fully of the financial terms of the tour agreement, Pellegriniv. Landmark Travel, 165 Misc.2d 589, 628 N.Y.S.2d 1003
(City Court of Yonkers 1995), or to be aware of the precarious financial condition of the airline which transported the plaintiff and went bankrupt while she was away on the trip. Rodriguez v. Cardona Travel Bureau,216 N.J. Super. 226, 523 A.2d 281 (Super. Court, Essex County 1986). Either is a far cry from a latent structural defect.
Another court denied a summary judgment motion solely because there was CT Page 12794 a material issue whether the agent, who dealt directly with the plaintiff there, recommended the particular resort or acted merely as a ticketing agent, facts and issues which are not present here. Cicchiello v. ReneyTours Plane Broker, Inc., Superior Court, Judicial District of Hartford-New Britain at New Britain, Docket No. CV 94 460805 (May 3, 1996). In the only decision finding liability for failure to investigate accommodations it was found that the travel agent knew nothing at all about the resort in which it booked the plaintiffs, and that the "accommodations [were] so totally unacceptable that any reasonable travel agent would have known not to make such recommendations. . . ." Josephsv. Fuller (Club Dominicus), 186 N.J. Super. 47, 51, 451 A.2d 203 (1982). The only decision at an appellate level cited by the plaintiffs restates the general rule cited above; viz., "where the agent has knowledge of safety factors or where such information is readily available, a travel agent has the duty to inform the customer of those factors" and upholds the denial of a summary judgment motion because the plaintiffs' "opposing papers adequately demonstrated that facts establishing such notice may exist but could not be stated until discovery has been completed. . . .", a circumstance not present here. See footnote 6, supra. (Emphasis added.) Creteau v. Liberty Travel, Inc., 195 App.Div.2d 1012, 1012-13,600 N.Y.S.2d 576 (4th Dept. 1993).
Finally, my decision comports with the approach taken by the Appellate Court in the Davies case.[7] In that case the plaintiff claimed to have broken her ankle when she slipped in loose sand while stepping off a tour bus in Morocco. The trial court entered summary judgment for the defendant tour operator; the Appellate Court affirmed because, inter alia, "(g)iven the facts before this court, we can discern no duty that the defendant owed to the plaintiff to warn her of the alleged hazard that caused her injury". Davies v. General Tours, Inc., supra,63 Conn. App. 27.
Finding that "the extent of a tour operator's duty to warn tourists of dangerous conditions is an issue of first impression in Connecticut", Id., 23, the court reviewed cases from other jurisdictions and concluded that "`(c)ourts have usually found that there never existed a relationship which would have given rise to a duty on the part of the travel agent to investigate the safety or instrumentalities over which it had no control or knowledge'". Id., quoting McAleer v. Smith,860 F. Sup. 924, 931 (D.R.I. 1994). The court relied on an affidavit of the defendant's vice president to the effect that it had no prior knowledge of where the bus would stop or the conditions in that location. Id., 25. "The plaintiff has failed to present evidence sufficient to establish the existence of a genuine issue of material fact that the defendant was aware of any particular risk inherent in travel on the tour buses used in Morocco or in the practice of stepping off of CT Page 12795 those buses onto uncertain roadside terrain." Id., 24.
Likewise in this case, the plaintiffs have failed to present evidence that these defendants knew of the structural deficiency of the balcony at the plaintiffs' hotel or that they should have known.
I am in agreement with the court's statement in the Rodriquez case cited by the plaintiffs that "(I)n many travel cases courts are faced with deciding which of two innocent parties should bear the burden of another party's [in this case, the hotel's] default. As between the traveler and the travel agent, the latter is in a far better position to verify and establish the reliability and integrity of suppliers, wholesalers and tour operators." Rodriquez v. Cardona Travel Bureau,
supra, 216 N.J. Super. 230-31. With these defendants out of the case it seems unlikely that the plaintiffs will secure adequate compensation for their serious injuries from the foreign corporation which owns and operates the hotel or the local travel agent, both of which have defaulted in their defense of the case. I also agree with the Rodriquez court, however, that travel professionals can only be held liable "(i)f the [travel] arrangements fail in a manner which the travel agent should have foreseen but didn't as a result of his or her failure to exercise the requisite skill or diligence". Id., 229.
Pursuant to Practice Book § 17-49, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v.St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753 (2000).
Because the plaintiffs have not provided an evidentiary foundation demonstrating a genuine issue as to these defendants' actual or constructive knowledge of the structural defect which caused their injuries, the motions for summary judgment are granted. Based on the record here, it was not reasonably foreseeable by these defendants, when they arranged the plaintiffs' trip and booked their room, that the hotel would have a structural defect which would cause their balcony to collapse and the plaintiffs to suffer their serious injuries. CT Page 12796
Judgment shall enter for the defendants Friendly Holidays, Inc. and TravAmerica, Inc.
BY THE COURT
Joseph M. Shortall, J.