**Lillian LOEB and Emanuel Loeb, Plaintiffs,**

**v.**

**UNITED STATES of America, DEPT. of the INTERIOR, Tauck Tours, a/k/a Tauck Tours Inc. and Grand Teton Lodge Co., a/k/a Jackson Lake Lodge, Defendants.**

**No. CV 91–1294 (ADS).**

United States District Court, E.D. New York.

May 20, 1992.

Rita Stein, Mineola, N.Y., for plaintiffs.

Andrew J. Maloney, U.S. Atty., E.D.N.Y., by Sarah J. Lum, Asst. U.S. Atty., Brooklyn, N.Y., for U.S. Dept. of the Interior.

Jones Hirsch Connors & Bull (Stephen E. Erickson, Veronica A. Zunno, of counsel), New York City, for Grand Teton Lodge a/k/a Jackson Lake Lodge.

Fiedelman & Hoefling (August H. Englert, of counsel), Jericho, N.Y., for Tauck Tours, a/k/a Tauck Tours Inc.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This case concerns the liability of a vacation tour operator for personal injuries sustained by a tour patron while she was walking in and about the majestic Grand Teton National Park—an area not under the control of the tour operator.

This Court recently decided two motions to dismiss brought by the Government and by the Grand Teton Lodge. In a Memorandum Decision and Order dated March 23, 1992, the Court granted the Government's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction based upon the plaintiffs' failure to satisfy the condition precedent to suit under the Federal Tort Claims Act. The motion by defendant Grand Teton Lodge to dismiss the complaint, pursu-

ant to Fed.R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction was also granted, without prejudice to the plaintiffs filing an amended complaint within thirty days.

The third defendant, Tauck Tours ("Tauck"), now moves for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion by Tauck Tours for summary judgment is granted.

## I. BACKGROUND

The Court presumes familiarity with this case based upon its March 23, 1992 Memorandum Decision and Order, and therefore recites only those facts necessary to the determination of this motion for summary judgment.

The plaintiffs, Lillian and Emanuel Loeb, were members of a June 1988 tour, managed by the defendant Tauck Tours, which was visiting the Grand Teton National Park in Moran, Wyoming. While at the Grand Teton National Park, the Loebs stayed at the Grand Teton Lodge, a/k/a Jackson Lake Lodge. On June 28, 1988, while walking in an area near the Lodge, Lillian Loeb fell to the ground and "sustained severe injuries and fractures to various parts of her body" (Complaint, ¶ 23).

As to the defendant Tauck, the complaint alleges the following:

"FOURTH: Defendant, TAUCK TOURS, is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in that state.

\* \* \* \* \* \*

TWELFTH: That on or about June 28, 1988, the defendant, TAUCK TOURS, its agents, servants and/or employees did arrange, sponsor, organize and supervise a trip to the GRAND TETON LODGE, its grounds and the trails and paths in Grand Teton Parks and surrounding and abutting the GRAND TETON LODGE.

\* \* \* \* \* \*

FIFTEENTH: At all times hereinafter mentioned, TAUCK TOURS is an organi-

zation that solicits tourists to enroll in their planned and supervised tours.

\* \* \* \* \* \*

EIGHTEENTH: At all times hereinafter mentioned, it was the duty of said defendant, TAUCK TOURS, to bring plaintiffs to a place that used reasonable care and diligence in the ownership, operation, management, maintenance, care, use, conduct of said premises and at all times kept same in a safe condition for guests and business invitees thereon.

NINETEENTH: That on June 28, 1988, the plaintiffs were members of a tour managed by defendant, TAUCK TOURS, and were taken by TAUCK TOURS to the GRAND TETON LODGE and the Grand Teton National Park.

\* \* \* \* \* \*

TWENTY–SECOND: That defendants, its agents, servants and/or employees were reckless, careless and negligent in its ownership, operation and maintenance in said premises; in failing to keep the premises in good and safe conditions; in failing to maintain said premises in a safe condition for persons lawfully walking thereon; in failing to erect barricades and other devices to prevent the occurrence of an accident; in that they allowed a dangerous condition to exist … in failing to give due and adequate warning to the plaintiff of said dangerous and treacherous conditions … in failing to exercise due diligence; in knowing of the existence of said dangerous condition and in failing to take steps to remedy or avert said condition which with due diligence could have and should have been corrected; in failing to make proper and timely inspections of said area …"

In its Answer, defendant Tauck Tours advanced the following affirmative defenses: (1) culpable conduct of the plaintiff under New York C.P.L.R. Article 14–A; (2) lack of *in personam* jurisdiction; and (3) assumption of risk. In addition, Tauck asserted a cross-claim for contribution and/or indemnification against the co-defendants United States of America, Department of the Interior, and Grand Teton Lodge.

## II.  PROCEDURAL SETTING

As grounds for its summary judgment motion, Tauck Tours states that it has no involvement in this action because its only responsibility was to "make arrangements for the tour followed by the Loebs" (Declaration of August Englert, Esq., ¶ 3). Tauck further contends that there is no proximate cause between its actions or responsibilities and the plaintiffs' injuries.

According to Tauck, the tour operator is responsible for making arrangements for the accommodations of the plaintiffs. It asserts that it had no control over and no responsibility for the conditions at the Grand Teton Lodge nor for any defective conditions which may have been present there. Consequently, Tauck maintains that it owed no duty to the plaintiffs, did not proximately cause the injury to the plaintiffs, and therefore has no liability in this action.

In support of the motion, Tauck has provided the affidavit of Chuck Tauck, Director of Operations for Tauck Tours for the past ten years. Chuck Tauck states the following:

"3) As per the attached copy of the 'Tauck Tour Condition of Tour,' Tauck Tours was not responsible for any injuries sustained by Mrs. Loeb.

4) My records indicate that at the time of the occurance [sic], Mrs. Loeb was not taking part in any organized Tauck Tour activity.

5) Tauck Tours had no duty owed to the plaintiffs other than arranging the flights, accommodations, and of the tour" (Defendant's Memorandum of Law, Exhibit A).

The defendant also relies upon the "Tauck Tour Conditions of Tour" which provides in pertinent part as follows:

"... Tauck Tours, Inc. and their representatives assume no liability in arranging transportation, hotel, and other accommodations and are not responsible for any personal injury, illness or property damage or other loss or expense of any nature whatsoever arising directly or indirectly out of any actions of any restaurant, carrier, motel, hotel, or other person or supplier of services providing any of the services, programs or accommodations offered in connection with a Tour. Tauck Tours, Inc. does not own, manage, control, promote, run or operate any transportation or recreational vehicle, motel, hotel, restaurant, or any supplier of services....

Further, by participating in a Tauck Tour, you are bound by our rules and you participate in the activities of the Tour at your own risk. Climbing, hiking, extensive walking, touring in general, use of various transportation and recreational vehicles, and other physical activity involve greater risk of physical injury than the activities which you may participate in during your daily life, and by taking part in those activities, you incur and assume all the risks that these activities present. Tauck Tours, Inc. assumes no responsibility at all and no liability at all for any death, injury, illness, quarantine, sickness, diseases, natural disaster, damage, loss, delay, accident, expense, defect or any other abnormality which may result from your participation in any activity during the Tour....

The issuance and acceptance of tickets and/or other documents in connection with this Tour is considered acceptance of the above terms" (Defendant's Memorandum of Law, Exhibit B).

Based upon this data, Tauck maintains that Lillian Loeb's accident would have occurred whether or not Tauck was involved in the arrangements and that nothing done by Tauck caused the plaintiff to trip. Contending that it had no duty to Lillian Loeb, Tauck argues that there is no breach, and consequently, no liability.

In opposing the motion, counsel for the plaintiff states that "Defendant, TAUCK TOURS INC. sponsored the tour to the GRAND TETON LODGE, selected the itinerary, chose the hotels, provided the transportation, selected the bus driver and tour leader and promulgated the rules and regulations of the tour" (Plaintiff's Memorandum of Law at p. 2). As such, the plaintiff argues, "[b]y selecting the site, providing supervision, promulgating the rules and

regulations, TAUCK TOURS INC. had an affirmative duty to warn the plaintiffs of any and all foreseeable, dangerous conditions. TAUCK TOURS INC. breached that obligation and that breach was the proximate cause of plaintiffs injury" (*id.*).

Counsel takes issue with the affidavit of Chuck Tauck, noting that his "allegation that the only duty owed to the plaintiff was arranging the flights, accommodation and of the tour is contradicted by their own Exhibit B, labeled 'Conditions of the Tour' ..." which "asserts defendant's right to make changes in itinerary, hotels, restaurants, carriers, programs or other service without notice. Everyone on a TAUCK TOUR *is required to follow the guidelines and any others set forth by a TAUCK TOUR representative*" (*id.* at p. 434) (emphasis in the original).

In urging the Court to consider what it terms triable issues of fact, the plaintiffs assert the following:

"... There is no statement regarding prior inspection of the premises before selecting those accommodations for the tour members. The defendant does not indicate whether it knew of any prior accidents on the premises. The Court is not informed whether the tour leaders or any other representatives warned the tour members of the possible dangerous conditions.... On the bus and throughout the tour, TAUCK TOUR placed their representative, the tour director, in charge of the tour and that tour director stated the terms and conditions with which the tour members were obligated to comply. Plaintiff further attests that neither the bus driver nor the tour leader warned them of dangers, advised them to avoid the area where the accident happened, instructed them on the foreseeable [sic] or probability of an accident" (*id.* at pp. 434–35).

In her Affidavit opposing the defendant's motion for summary judgment, the plaintiff Lillian Loeb states that

"[w]e were taken to our accommodations by TAUCK TOUR. We made no personal arrangements with any of the hotels for meals or lodging. Everything was arranged and supervised by TAUCK TOUR and their representatives. TAUCK TOUR furthermore reserved to themselves the right to change the arrangements without our notice or consent....

At no time did anyone from TAUCK TOURS, GRAND TETON LODGE or anyone else warn us that there were dangerous conditions and that we should be aware of rocky slopes, steep trails, narrow, untended paths or any other dangerous conditions. We were not told to avoid any areas or given any information about the terrain."

Mrs. Loeb adds that she does not recall ever seeing an exculpatory clause in the ticket or tour information and was not aware that any such agreement existed. In asserting that TAUCK TOURS failed in its duty to warn her of any foreseeable dangers, Lillian Loeb maintains that she relied upon TAUCK TOURS to provide the services promised in a safe and dependable way.

### III. THE GOVERNING LAW

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir. 1990], and the movant is entitled to judgment as a matter of law (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed.R.Civ.P. 56[c]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine

issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56[e]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990]).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir. 1990]).

As to the substantive law, a federal district court deciding a diversity case must apply the choice of law rules employed by the courts in the state in which the district court sits (*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 [1941]; *see also Day & Zimmerann, Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 167–68, 46 L.Ed.2d 3 [1975]). The New York courts apply an "interest" analysis to choice of law issues in tort cases (*Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 [1963]; *see also Schultz v. Boy Scouts*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 [1985]). In *Babcock*, the New York Court of Appeals determined that choice of law questions are governed by "the law of the jurisdiction, which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation" (*id.* 12 N.Y.2d at p. 481, 240 N.Y.S.2d 743, 191 N.E.2d 279).

In the instant case, the alleged tort took place in Wyoming, which would appear to favor the application of Wyoming law. On the other hand, the plaintiffs reside in New York while the defendant Tauck is incorporated under the laws of Connecticut. The complaint does not indicate where or when the Loebs bought their tour tickets. The cause of action has been brought in the Eastern District of New York, within the geographic confines of the State of New York.

The Court takes note that the parties have not addressed this choice of law issue, but rather have presumed that New York law applies. Having considered each of these factors, and having employed the "interest" analysis, the Court applies New York law to the instant case.

## IV. DISCUSSION

The issue central to the defendant Tauck Tours' motion for summary judgment is whether Tauck owed a duty to the Loebs, and if so, whether it breached that duty.

The Court first notes that neither party discusses the purported negligence in the context of any duty on the part of a tour planner or operator, nor does either party cite any authority asserting such a duty. Both approach the topic from the application of common law negligence principles. Moreover, the plaintiff relies to a greater extent upon general policy considerations which deem that exculpatory clauses will not insulate a party from liability for its own negligent acts.

In the instant case, counsel for the plaintiff contends that Lillian Loeb fell and broke her wrist while on the premises of the Grand Teton Lodge. Counsel claims that Tauck, as operator of the tour, had a duty to bring the plaintiffs to a place that used reasonable care and diligence in the operation and management of its premises and which kept the premises in a safe condition for guests. Again, the plaintiff cites no authority for this general proposition and the Court declines to impose such a far-ranging and broad duty on the part of Tauck as the tour operator.

■ To the extent that the plaintiffs raise a claim based upon premises liability, namely, failure to warn of a hazardous condition, they do not state a cause of action against this defendant, since TAUCK TOURS is neither the owner nor occupier of the land where the plaintiff fell (*see Lavine v. General Mills, Inc.*, 519 F.Supp. 332, 335 [N.D.Ga.1981] [summary judgment granted on behalf of tour package seller and tour package planner in negligence action brought by tour member who suffered personal injuries during slip and fall on a rocky beach in the Fiji Islands]).

■ The plaintiff also claims that Tauck had a duty to warn tour members of allegedly hazardous conditions at a guest site along the travel route, although providing no authority for this claim. The Court is unable to discern a duty on the part of TAUCK TOURS to warn or protect Mrs. Loeb from a possible hazardous condition which may exist on the property of others.

The Court notes that the plaintiffs' proof with regard to an alleged hazardous condition is vague. The plaintiffs have failed to describe such a hazard, in either the complaint or subsequent memoranda of law. In reviewing the case file, however, the Court did discover "Standard Form 95—Claim For Damage, Injury or Death," attached as Exhibit 1 to the Declaration of Ralph O. Canady, attorney in the Office of the Regional Solicitor, U.S. Department of the Interior, in Golden, Colorado. Form 95 was submitted to the Department of the Interior as Mrs. Loeb's official claim in regard to the present incident. Under "Description of Accident," Mrs. Loeb stated the following:

"On June 28, 1988, at approximately 5 P.M. my husband and I went for a walk outside our cabin #100 at the Jackson Lake Lodge, Moran, Wyoming. At the end of the path, there was a narrow, dirt path. I continued walking with my husband and fell and fractured my wrist."

After receiving the claim form, the Government responded by letter on June 21, 1990, stating that

"[t]he National Park Service (NPS) based upon interviews, drawings, and photographs supplied to you and your input established the area where you fell to be on a grassy slope behind (west) of the section 100 cabins which had a faint path trodden in the lawn. There are no doors on the west side of the section 100 cabins. This area has never been developed or maintained in any way as a walkway or official trail for guests by either NPS or the Grand Teton Lodge Company." (Canady Declaration, Exhibit 2).

■ Ordinarily, under New York law, an independent travel or booking agent cannot be held responsible for the negligence of its principal, where the agent simply makes the reservation or packages the tour (*see Jacobson v. Princess Hotels Intern., Inc.*, 101 A.D.2d 757, 475 N.Y.S.2d 846, 848 [1st Dept.1984]; *see also Meshel v. Resorts International of New York, Inc.*, 160 A.D.2d 211, 553 N.Y.S.2d 342 [1st Dept.1990] [subsidiary corporation which operated tour business that provided customers to hotel indirectly owned by parent corporation and which did not share employees could not be held liable for alleged negligence of hotel's agents or employees]). This is not a case where the advertising brochures and materials distributed by Tauck to the public made reference to the Grand Teton Lodge as "our lodge, our motel, our sister motel" or anything similar (*id.*). Tauck Tours is a separate, independent entity from the Grand Teton Lodge, having a separate corporate identity and no interlocking relationship.

Furthermore, in the advertising material and the "Conditions of Tour" document, Tauck clearly disclaims ownership, operation and control of any "transportation vehicle, motel, hotel, restaurant, or any supplier of services" (Defendant's Memorandum of Law, Exhibit B). In such circumstances, courts have rejected principal-agent arguments which attempt to hold tour companies liable—most often finding the alleged principal to be an independent contractor (*see Wilson v. American Trans. Inc.*, 874 F.2d 386 [7th Cir.1989]).

The courts have properly reasoned that where tour companies are not owners or occupiers of property where plaintiffs are injured, the tour operator owes no duty to tour members to inform them of the possible hazardous conditions which may exist on the property of others (*id.* at p. 389; *see also Connolly v. Samuelson,* 671 F.Supp. 1312, 1316 [D.Kan.1987] ).

The New York case cited most often in this context is *Dorkin v. American Express Co.,* 74 Misc.2d 673, 345 N.Y.S.2d 891 (N.Y.Sup.Ct.1973), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190 (3d Dept.1974). In *Dorkin,* a husband and wife brought a negligence and breach of contract claim against an American travel service with which they had booked a European tour (*Dorkin,* 74 Misc.2d at 892, 345 N.Y.S.2d 891). While on the tour, the wife was injured when she was thrown to the floor as the tour bus braked abruptly (*id.* at p. 893, 345 N.Y.S.2d 891). The plaintiffs alleged that the travel service failed "to exercise reasonable and prudent care in providing or causing to be provided safe equipment and careful personnel in the discharge of its contractual obligation to supply a safe, entertaining European tour" (*id.*).

The trial court determined that the evidence did not support a cause of action for either negligence or breach of contract against the defendant American Express. Specifically, the court held that if American Express were the agent of the various hotels and transportation companies that actually supplied the services abroad, then "liability must fail on the ground that an agent is not responsible for the tortious conduct of a principal" (*id., citing Sacks v. Loew's Theatres, Inc.,* 47 Misc.2d 854, 263 N.Y.S.2d 253 [N.Y.Sup.Ct.1965] ).

In affirming the trial court's determination, the Appellate Division, Third Department found that the tour bus company was an independent contractor, precluding any liability on the part of the defendant American Express, either on a theory of negligence or breach of contract (*Dorkin,* 43 A.D.2d 877, 351 N.Y.S.2d 190, 192 [3d Dept. 1974] ). In discussing the relationship between the plaintiff, the defendant tour ar-ranger and the bus company, the Third Department stated:

"[d]efendant agreed to supply plaintiffs with a planned European tour with meals, lodging and transportation. It did not, however, insure the safety of the plaintiff. The disclaimer in the tour contract negates any intent of defendant to assume a contractual obligation for such safety ... The only proof in opposition was the affidavit of Natalie Dorkin which merely set forth the allegations of the complaint and bill of particulars without reciting any evidentiary facts" (*id.*).

In the instant case, the language of the "Tauck Tour Conditions of Tour" is quite clear that Tauck was not assuming any contractual obligation for Mrs. Loeb's safety. Further, Mrs. Loeb was not on a Tauck bus or on Tauck property when the accident occurred. She was walking on some terrain in the vicinity of the Grand Teton Lodge. The defendant Grand Teton contends that the area in question is part of the public park. The Government, no longer a defendant in this case, has claimed that this section is not in the public portion of the park, but rather on the private grounds of the Grand Teton Lodge. In either case, it is clear that Tauck exercised no control over the terrain, nor over the Grand Teton Lodge.

In Lillian Loeb's Affidavit, she states that the brochure provided by Tauck advised the participants "that there are walking trails close to the hotel ... and offers suggestions and arrangements for private excursions" (Plaintiff's Memorandum in Opposition, Exhibit A). The plaintiff has provided the brochure which discusses various topics, including "Joining Instructions," "Luggage," "Clothing," and a "Day 1" through "Day 6" itinerary. "Day 5," upon which the plaintiff relies, states the following:

"———— Luggage ready

———— Breakfast

Early morning is time to see more of Yellowstone. *There are walking trails close by your hotel.*

———— Depart for Jackson, Wyoming via magnificent Grand Teton National

Park. Lunch is in Jackson with time for shopping before sightseeing this afternoon.

_____ Depart for sightseeing the Grand Tetons before arriving at your hotel for the next two nights.

_____ Dinner (jackets optional)" (Plaintiff's Memorandum in Opposition, Exhibit B) (emphasis supplied). The "Day 6" itinerary adds that "The entire day is at leisure to enjoy the beautiful surroundings and the activities at the hotel. There are a number of optional activities available. You may take them on your own and your Tour Director will help you with suggestions and arrangement."

■ The plaintiffs urge this Court to conclude from this non-inculpatory language that Tauck is somehow responsible for all actions undertaken by any tour participant at any time and in any place. This Court will not make such an unwarranted leap. (*See Wilson v. American Trans. Inc., supra,* 874 F.2d at p. 389 [charter tour contract did not impose duties of innkeeper on charter tour operator as principal, nor did tour operator assume duty to conduct reasonable inquiry into safety record of hotel]).

■ In regard to the exculpatory clause, courts have upheld such disclaimers in the context of travel brochures and tour operators (*see Dorkin v. American Express Company, supra,* 43 A.D.2d 877, 351 N.Y.S.2d at p. 192; *see also DeMarco v. Pan American World Airways, Inc.,* 117 Misc.2d 1071, 459 N.Y.S.2d 655 [N.Y.Sup. Ct.1982]). It is evident that Tauck specifically disavowed any duty to insure against the negligence of independent contractors, such as the Grand Teton Lodge, with whom it arranged accommodations as part of the "Salt Lake Yellowstone" tour. Tauck agreed to supply the plaintiffs with a planned tour with meals, lodging and transportation, but did not insure the personal safety of every traveler in every circumstance of the tour (*see DeMarco v. Pan American World Airways, Inc., supra,* 117 Misc.2d 1071, 459 N.Y.S.2d at p. 656).

In essence, Tauck's disclaimer in its "Conditions of Tour" contract and its rela-tionship with the proprietors who supplied lodging to the tour members preclude any liability on the part of Tauck, either on a theory of of breach of contract or negligence (*see Dorkin v. American Express Co., supra,* 43 A.D.2d 877, 351 N.Y.S.2d 190).

In light of the above, the Court can find no liability, as a matter of law, on the part of defendant Tauck based upon the Loebs' walk into unchartered terrain in daylight. Nor does this Court find any duty on the part of Tauck, as a matter of law, to warn tour patrons of the particular danger, if there be such a danger, as described in Mrs. Loeb's claim form.

A fair reading of the relationship between the defendant Tauck and the defendant Grand Teton Lodge unequivocally establishes the relationship of principal and independent contractor. Therefore, no liability for the injury sustained by Mrs. Loeb, which might possibly be attributed to the Grand Teton Lodge, can be ascribed to Tauck Tours. Likewise, having found no duty on the part of Tauck to Lillian Loeb, the Court finds there is no duty owed by Tauck to Emanuel Loeb in his derivative claim. Consequently, there being no triable issue of fact, the Court finds that summary judgment is appropriate in these circumstances.

## V.  CONCLUSION

Based on the foregoing, the motion by defendant Tauck Tours, pursuant to Fed. R.Civ.P. 56, for summary judgment dismissing the complaint as against the defendant Tauck Tours is granted.

The Clerk of the Court is hereby notified that this action dismisses the complaint as it relates to defendant Tauck Tours only.

SO ORDERED.