61 A.3d 968

ROBERTA SLOTNICK, PLAINTIFF, v. CLUB ABC TOURS, INC. AND STI TRAVEL, LLC, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 9, 2012—Approved for Publication March 7, 2013.

*David Eisbrouch,* and *David Pamtz,* for plaintiff (*Eisbrouch & Marsh, LLC,* attorneys).

*Frank J. DeAngelis,* for defendant Crown Travel Services, Inc. d/b/a Club ABC Tours, Inc. (*Mound Cotton Wollan & Green-Grass,* attorneys).

*Bruce A. Seidman,* for defendant STI Travel, LLC (*Marshall Dennehey Warner Coleman & Goggin,* attorneys).

MARTINOTTI, J.S.C.

Before the court are defendant Crown Travel Services, Inc.'s (d/b/a/ Club ABC Tours, Inc.) (hereinafter "Club ABC") and STI Travel LLC's (hereinafter "STI") motions for summary judgment. Plaintiff Roberta Slotnick (hereinafter "Slotnick") has filed opposition to these motions.

## FACTS

This matter arises out of an injury suffered by Slotnick while on a "13–day Egypt Deluxe with Jordan Extension" trip, departing October 17, 2009, and returning October 29, 2009, that Club ABC booked for her through STI. Slotnick alleges that she fell during an optional excursion (the "excursion") on October 27, 2009, with a tour guide from Al Thuraya Travel & Tours ("T3"), a company hired by STI, who offered to take Slotnick and her fellow travelers to his family cave. Although parties dispute many of the facts, such facts are not outcome determinative.[1]

Slotnick booked her tour through Club ABC. Club ABC was and is [2] a full-service travel agency, travel club, and tour operator with Robert Paris holding the position of co-president. Club ABC does not own the elements (i.e. including but not limited to airline, transportation, cruise lines or hotels) of the tour packages it sells. Club ABC did not guarantee, in any brochures, oral presentations, conversation, or other documents and communications, that no harm would occur to individuals who purchase cruise packages

---

[1] The court will discuss disputed facts and applicable law throughout in reaching its decision. *See infra.*

[2] While this decision was pending, the court notes *The Record* published an article indicating that Club ABC has "apparently ceased operation, according to the Better Business Bureau of New Jersey." Hugh R. Morley and Jill Schensul, *Tour Operator Shuttered, The Record,* at A–18 (October 5, 2012).

while those individuals were in the hands of independent third-party suppliers of services over whom Club ABC has no control. Club ABC's terms and conditions, the same which governed at the time of Slotnick's tour, specifically disclaimed any liability for the negligent acts or omissions of third party suppliers of services. This same disclaimer is available on Club ABC's website and has been there since at least 2008. The parties dispute whether Slotnick had notice of the disclaimer or affirmatively agreed to it at the time of booking her trip.

Club ABC contracted with STI on or around March 9, 2009, although the parties' relationship began in late 2008. STI, a New Jersey corporation, is an international tour operator with its principal place of business in Moonachie, New Jersey. Club ABC had come to know of STI and its reputation by visiting international trade shows. Prior to contracting with STI, Club ABC had no knowledge of any complaints regarding STI's services. The agreement between the parties states that "STI will confirm all received bookings for Egypt packages" and that Club ABC would "send the final rooming list to be utilized." Additionally, the agreement states, "For any destination other than Egypt the space will be booked on request basis only." Club ABC and STI acknowledge that the agreement is vague with respect to the services to be provided by the respective parties, specifically, which party will design the itineraries and whether STI may contract its services to third parties.

Slotnick has provided email correspondence between Club ABC and STI dated March 23, 2009. In such, STI confirmed receipt of "three booking for Nov [sic] that have the Jordan extension . . . [but] we d[o] not have rates for Jordan past October 31." STI then advised Club ABC of the three-night Jordan package they have available. Club ABC responds, "The Jordan extension should be a 3 night [sic] INCLUDING the last night in Cairo," and suggests a schedule, which includes a "nightly visit of Petra by candlelight."

STI contracted with T3, an independent contractor hired to arrange and provide the ground handling services in Jordan for the trip booked by Club ABC. Prior to hiring T3, STI asserts it used due diligence in its selection by obtaining positive recommendations from other tour companies, by meeting with the Jordanian tourist board, and by reading reviews from the board regarding T3. STI also asserts that it did not have any knowledge of complaints from previous travelers regarding T3, and no knowledge of excursions to tour guides' family caves. STI did not and does not own any of the aspects of the itinerary provided by T3 in Jordan, including the airport, airline, ground transportation, hotels or any site to be visited. Further, the tour guide provided by T3 was not an employee of STI. Similarly, Club ABC does not now and has never owned, operated, managed, or controlled STI or T3.

Slotnick alleges that she fell during an optional excursion on October 27, 2009, with a tour guide, named "Zayed," who offered to take Slotnick and her fellow travelers to his family cave. The excursion was not part of the package sold by Club ABC, which, as Slotnick also understood, did not include all meals. Instead, Slotnick purchased the excursion either through the tour guide, employed by T3, or another T3 employee. Slotnick was told that dinner in the family cave would be $30 in cash to cover the cost of food. During the excursion, the tour guide's cousin, "Mohammed," attempted to pick Slotnick up "for no apparent reason", and upon doing so, stumbled and fell on top of her allegedly causing her injuries.[3]

Slotnick and witness Marilee Linden have testified that they understood the tour guides and drivers to be from Club ABC. Although Slotnick did not purchase the excursion from Club ABC and Zayed was a tour guide from T3, Zayed carried a "Club ABC" sign at the airport in Jordan. Club ABC asserts that this is standard practice, so that the travelers may identify their tour,

---

[3] The nature and extent of Slotnick's injuries are not germane to the issues before the court.

and in no way indicates that Club ABC is providing service. Slotnick testified that she did not remember Zayed stating that the trip to the family cave was approved by Club ABC or anyone else.

Slotnick brings this lawsuit based on theories of negligent operation, negligent control and supervision, failure to exercise reasonable care, and failure to warn.

## MOVANTS' ARGUMENTS

*Club ABC*

Club ABC argues that Slotnick has no viable claim against Club ABC under any theory of liability. Club ABC asserts that its terms and conditions effectively disclaimed liability for any damage caused by negligent acts or omissions of tour service suppliers. Further, Club ABC argues that New Jersey law holds travel agents are not liable for the negligence of an independent supplier of services.

Club ABC also notes the following: Slotnick has not alleged that Club ABC owned, operated, managed or controlled the local tour guide, an independent contractor, nor that there are any facts which would impose a duty to warn tour participants of allegedly unsafe conditions on the tour. Slotnick has not provided any facts showing that Club ABC guaranteed Slotnick's safety while on the tour or that Club ABC was negligent. Slotnick has admitted to having a copy of the paperwork and tour brochure containing the waiver prior to and subsequent to her accident. Slotnick has also stated that she may have visited Club ABC's website where the same information is likewise displayed.

Further, Club ABC states that it has found STI to be a safe and reliable ground handler in Jordan. Club ABC argues that, although a guide meeting a group at the airport may have a "Club ABC" sign, it would be for identification purposes only so that the participants may find the tour.

*STI*

STI argues that Slotnick has not stated a viable cause of action against STI, as tour operators are not liable to travelers for the negligence of an independent supplier of services. Further, STI puts forth that it had no duty to warn Slotnick of any hazardous conditions on her tour. Lastly, Slotnick cannot sustain a cause of action alleging negligent selection, or a trip free from harm caused by third parties.

STI moves for the dismissal of all cross-claims of Club ABC for contribution and indemnification, because, if STI cannot be held liable to Slotnick, it cannot be held liable to Club ABC.

## *SLOTNICK'S RESPONSE*

Slotnick argues that nothing that Club ABC has provided demonstrates that it was a mere booking agent with no role during the trip. Slotnick asserts that the travelers were clients of Club ABC, were expecting to be accompanied by Club ABC, and had no idea who STI or T3 was. Further, Slotnick argues that Club ABC has not shown that Slotnick signed away her rights or a disclaimer as a bar to recovery. Also, Slotnick argues that Club ABC has not provided any evidence to support its claim that all overseas roles were contracted out. Slotnick argues that Club ABC's co-President's certification denying that he controlled those who caused the injuries is not a sufficient showing that Club ABC was not negligent as a matter of law to warrant summary judgment.

Likewise, Slotnick argues STI has not proven that it cannot be held liable as a matter of law. STI's statement that it contracted away its duties to a third party is not proven nor does it relieve STI of its obligations to the travelers. STI actively participated in the tour, including in the excursion, and, at the very least, there are material questions of fact as to STI's role on the trip thereby making summary judgment inappropriate.

## DECISION

### I. SUMMARY JUDGMENT

Under the developed governing standard, a summary judgment motion continues to require "searching review" of the record on the part of the trial court to ascertain whether there is a genuine issue of material fact. *R.* 4:46–2. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 541, 666 *A.*2d 146 (1995). As such, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." *Id.* at 540, 666 *A.*2d 146. Summary judgment must be granted when the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986). This means that summary judgment cannot be defeated if the non-moving party does not "offer[ ] any concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256, 106 *S.Ct.* at 2514, 91 *L.Ed.*2d at 217. The non-movant has the "burden of producing in turn evidence that would support a jury verdict," and must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 *S.Ct.* at 2514, 91 *L.Ed.*2d at 217.

"[C]onclusory and self-serving assertions" in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment. *Puder v. Buechel*, 183 *N.J.* 428, 440, 874 *A.*2d 534 (2005) (citing *Martin v. Rutgers Cas. Ins. Co.*, 346 *N.J.Super.* 320, 323, 787 *A.*2d 948 (App.Div.2002)). Competent opposition requires "competent evidential material" beyond mere "speculation" and "fanciful arguments." *Merchs. Express Money Order Co. v. Sun Nat'l Bank*, 374 *N.J.Super.* 556, 563, 866 *A.*2d 189 (App.Div.2005), *appeal dismissed*, 183 *N.J.* 592, 874 *A.*2d 1109 (2005); *O'Loughlin v. Nat'l Cmty. Bank*, 338 *N.J.Super.* 592, 606–07, 770 *A.*2d 1185 (App.Div.) (opponent must do more than establish abstract doubt regarding material facts), *certif. denied*, 169 *N.J.* 606, 782 *A.*2d 424 (2001). *See also James Talcott, Inc. v.*

*Shulman,* 82 *N.J.Super.* 438, 443, 198 *A.*2d 98 (App.Div.1964) ("Mere sworn conclusions of ultimate facts, without material basis or supporting affidavits by persons having actual knowledge of the facts, are insufficient to withstand a motion for summary judgment.").

## II. *Liability Of Travel Agents And Tour Operators For Negligence Of Independent Suppliers of Services*

Liability of travel agents and tour operators—specifically, those who have disclaimed liability—is a novel issue in New Jersey jurisprudence. There are no published state court cases on point.

Courts elsewhere have found no liability when addressing enforcement of a tour operator or travel agent's disclaimer of liability. *Smith v. W. Rochelle Travel Agency, Inc.,* 238 *A.D.*2d 398, 656 *N.Y.S.*2d 340, 341–42 (App.Div.1997) (finding that, because contract contained express disclaimers of liability, defendant could not be held liable for negligence by independent contractor); *Dorkin v. Am. Express Co.,* 74 *Misc.*2d 673, 345 *N.Y.S.*2d 891 (Sup.Ct.Spec.Term, 1973), (upholding finding that tour operator's disclaimer precludes tour participant's claims based on acts of independent entity), *aff'd,* 43 *A.D.*2d 877, 351 *N.Y.S.*2d 190 (1974).

In *Loeb v. United States, Department of Interior,* 793 *F.Supp.* 431 (E.D.N.Y.1992), the court granted summary judgment in favor of a tour operator after the plaintiff-traveler sustained injuries while walking in a park near the lodge in which the plaintiff was staying. The court relied, in part, on the defendant's "Conditions of Tour" to which the plaintiff allegedly agreed, despite the plaintiff's claims that "she [did] not recall ever seeing an exculpatory clause in the ticket or tour information and was not aware that any such agreement existed." *Id.* at 434–35. The court held that the defendant "clearly disclaim[ed] ownership, operation, and control of any 'transportation vehicle, motel, hotel, restaurant, or any supplier of services.' In such circumstances, courts have rejected principal-agent arguments which attempt to hold tour companies liable—most often finding the alleged principal to be an

independent contractor." *Id.* at 437 (citing *Wilson v. Am. Trans.* *Inc.,* 874 *F.*2d 386 (7th Cir.1989)).

Courts have also found disclaimers to be evidence that tour operators did not assume an affirmative duty to insure the safety of its travelers. In *Dorkin v. American Express Co.,* 43 *A.D.*2d 877, 351 *N.Y.S.*2d, 190, 192 (1974), the foreign bus on which plaintiff was injured was owned and operated by an independent contractor, and "[t]he disclaimer in the tour contract negate[d] any intent of defendant tour operator to assume a contractual obligation for such safety." Thus, the court affirmed the lower court's decision to grant summary judgment to the defendant. *Id.* at 193. *See also Carley v. Theater Dev't Fund,* 22 *F.Supp.*2d 224, 228 (S.D.N.Y.1998) (finding that tour operator and sponsor did not assume duty to protect plaintiff from allegedly dangerous window at hotel due, in part, to explicit disclaimer found in "terms and conditions" document given to plaintiff prior to departing on tour); *DeMarco v. Pan Am. World Airways, Inc.,* 117 *Misc.*2d 1071, 459 *N.Y.S.*2d 655 (Sup.Ct.Spec.Term, 1982) (finding defendant's disclaimer of airline's alleged negligence valid and that defendants did not insure the safety of plaintiffs' luggage where plaintiffs alleged they were, as a result of the lost luggage, "deprived of the reasonable enjoyment of the tour and their health was seriously affected").

The fact that a disclaimer appears in pre-printed documents and was not the product of bargaining between the parties does not affect its enforceability. In *Carnival Cruise Lines, Inc. v. Shute,* 499 *U.S.* 585, 593, 111 *S.Ct.* 1522, 113 *L.Ed.*2d 622 (1991), the United States Supreme Court upheld the enforceability of a forum selection clause in a contract between a cruise line and a passenger even though it appeared in a pre-printed ticket and was not the product of bargaining between the provider of the travel services and the traveler.

In this case, the terms and conditions issued by Club ABC prior to Slotnick's trip bar this action. The parties do not dispute that the language disclaims liability for the negligent acts of

suppliers of services to tours. Although the parties to this action dispute whether Slotnick had notice of Club ABC's exculpatory clause prior to booking her trip,[4] the court finds that she knew or should have known of the terms because they were printed on Club ABC's brochures as well as on Club ABC's website. *See Loeb*, 793 *F.Supp.* at 437 (upholding disclaimer despite plaintiff's argument that she did not remember seeing any "Conditions of Tour"). Moreover, Club ABC need not show that Slotnick affirmatively agreed to the terms or that the terms were a product of the parties' bargain, despite Slotnick's argument to the contrary; the terms need only be consistent with public policy. *See Carnival Cruise Lines, Inc., supra*, 499 *U.S.* at 593–95, 111 *S.Ct.* at 1527–28, 113 *L.Ed.*2d at 632–33.

A. *Liability Of Travel Agents Or Tour Operator For Negligence Of Third Party Suppliers, Absent Effective Disclaimer*

Even absent a disclaimer of liability, tour operators and travel agents are not liable for the alleged negligence or other acts or omissions of independent suppliers of services to tours because they have no control over such entities. Tour operators are not liable for the torts of independent contractors which they do not control, nor are they required to provide a perfect trip. Thus, a travel agent is not the guarantor of the safety of an individual. A tour operator may only be liable if there is "negligent selection or control."[5] *See Carley, supra*, 22 *F.Supp.*2d at 228; *Honeycutt v. Tour Carriage, Inc.*, 997 *F.Supp.* 694, 699 (W.D.N.C.1996); *McA-*

---

[4] Club ABC asserts that the terms and conditions at issue were printed on the back of the brochure used by Slotnick to book her trip as well as on Club ABC's website. Slotnick alleges that she does not recall seeing such terms, and Club ABC "has not shown that Ms. Slotnick signed away of her rights [sic] or to a disclaimer alleged by them as a bar to recovery."

[5] Negligent selection or control goes to defendants' own negligence, rather than the negligence of third parties, such as independent suppliers of services, which is discussed later in the opinion.

*leer v. Smith,* 860 *F.Supp.* 924, 931 (D.R.I.) (noting that "[c]ourts have generally declined to impose liability on travel agents and tour operators for injuries sustained by clients aboard vessels, buses and other modes of transportation or at hotels or other destinations" and finding that defendant owed, but was not negligent in, "duty to sail trainees to exercise due and reasonable care in choosing and approving vessels for sail training"), *aff'd,* 57 *F.*3d 109 (1st Cir.1995); *Lavine v. Gen. Mills, Inc.,* 519 *F.Supp.* 332 (N.D.Ga.1981) (finding tour operator not liable for a slip and fall on a rocky beach). The First, Third, Sixth, Seventh and Eighth Circuit Court of Appeals have also supported this reasoning. *Stafford v. Intrav, Inc.,* 841 *F.Supp.* 284 (E.D.Mo.1993), *aff'd,* 16 *F.*3d 1228 (8th Cir.1994); *Manahan v. NWA, Inc.,* 821 *F.Supp.* 1105 (D.Vi.), *aff'd,* 995 *F.*2d 218 (3d Cir.1993); *Fling v. Hollywood Travel & Tours,* 765 *F.Supp.* 1302 (N.D.Ohio 1990), *aff'd,* 933 *F.*2d 1008 (6th Cir.1991); *Wilson v. Am. Trans Air, Inc.,* 874 *F.*2d 386 (7th Cir.1989). It has been held that, although the travel agent who arranges plans is a special agent of the customer, the agent "is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel." *Schwartz v. Hilton Hotels Corp.,* 639 *F.Supp.*2d 467, 474 (D.N.J.2009) (quoting *Rookard v. Mexicoach,* 680 *F.*2d 1257, 1263 (9th Cir.1982)).

In this case, though Slotnick tries to raise issues of fact, the facts are uncontroverted. Club ABC does not now and has never owned, operated, managed or controlled STI, T3 or their employees. Similarly, STI does not own, operate, manage or control the actions of T3. Thus, neither Club ABC nor STI can be held liable for the negligence of T3, because T3 is an independent supplier of services. Club ABC and STI are therefore not liable for the acts or omissions of T3. This holding is consistent with the general rule in New Jersey that "ordinarily where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance, he is not liable for the negligent acts of the contractor in the

performance of the contract." *Majestic Realty Assocs., Inc. v. Toti Contracting Co.,* 30 *N.J.* 425, 430–31, 153 *A.*2d 321 (1959).

B. *Alleged Guarantee of a Trip Free of Harm Caused by Third Parties*

Slotnick claims that there was a guarantee of a trip free of harm. This claim is without legal basis. *See, e.g., Connolly v. Samuelson,* 671 *F.Supp.* 1312, 1317 (D.Kan.1987) ("[Tour operator] had no duty to provide plaintiff with a safe and secure tour."); *Semmelroth v. Am. Airlines,* 448 *F.Supp.* 730, 733 (E.D.Ill.1978) (finding that no special relationship existed between vacationing travel agent and defendant commercial airline and hotel operator, noting that such relationship was traditionally required to "impose[ ] a duty to guard against the criminal acts by third persons"); *Weiner v. British Overseas Airways Corp.,* 60 *A.D.*2d 427, 401 *N.Y.S.*2d 91, 95 (1978) (noting that even absent specific disclaimer, tour operators have no obligation to insure safety of services provided by suppliers of services to the tour).

In this case, Club ABC did not warrant the safety or enjoyment of Slotnick while on vacation. As stated in *Lavine:*

Even if it were made, a general promise that the trip would be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff. . . .

. . .

Not even a railroad, an airline or any other public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent. There is simply no legal liability in this case.

[519 *F.Supp.* at 336, 338.]

*See also Manahan, supra,* 821 *F.Supp.* at 1109; *Klinghoffer v. S.N.C. Achille Lauro,* 816 *F.Supp.* 934, 936 (S.D.N.Y.1993).

III. *Liability Of Travel Agents And Tour Operators For Their Own Negligence*

A. *New Jersey State And Federal Courts*

Few New Jersey state courts, and only slightly more New Jersey federal courts, have addressed the issue of travel agent or

tour operator liability for its own negligence, such as negligent selection or failure to warn. Almost all, however, are in agreement that a limited duty of care is owed. *Schwartz, supra,* 639 *F.Supp.*2d at 474.

In *Josephs v. Fuller,* 186 *N.J.Super.* 47, 49, 451 *A.*2d 203 (1982), the court specifically addressed whether "a travel agent owe[s] any duty of care to the traveler." The court stated: "The pecuniary benefit bestowed on defendant by plaintiff forms the basis of a legal duty[.] 'As a travel agent, defendant owed a certain duty to its customers. A travel agent is a special agent, akin to a broker, which engages in a special business transaction with the principal.'" *Id.* at 51, 451 *A.*2d 203 (quoting *United Airlines v. Lerner,* 87 *Ill.App.*3d 801, 43 *Ill.Dec.* 225, 410 *N.E.*2d 225, 228 (1980)). "A travel agent holds himself out as having some expertise, and a traveler should be able to rely on that expertise. It would seem that a travel agent who makes arrangements for a vacation without knowing anything about the accommodations has acted negligently." *Id.* at 50, 451 *A.*2d 203.

The court in *Josephs* found the travel agent liable for the subpar accommodations at the resort it booked for the plaintiffs. *Id.* at 51, 451 *A.*2d 203. The court distinguished *Sacks v. Loew's Theatres,* 47 *Misc.*2d 854, 263 *N.Y.S.*2d 253 (Sup.Ct.Spec.Term, 1965), a case in which liability of the travel agent was "properly avoided," because the travel agent in *Sacks* could not have foreseen that the hotel or its employees would commit the tortuous acts at issue. *Josephs, supra,* 186 *N.J.Super.* at 49–50, 451 *A.*2d 203. Conversely, in *Josephs,* the court held the travel agent liable because the accommodations were "so totally unacceptable that any reasonable travel agent would have known not to make such recommendations" for the travelers. *Id.* at 51, 451 *A.*2d 203. The court noted the relationship between travel agents and travelers, stating, "Plaintiffs could well have made their own arrangements, choosing a resort at random. But rather than risk a substandard vacation, they took advantage of a service offered by defendant. As it turned out, defendant had little or no more knowledge than

plaintiffs." *Id.* at 51, 451 *A.*2d 203. Consequently, the court found defendant liable due to defendant's lack of any knowledge regarding its hotel recommendation, which resulted in defendant making a recommendation that a reasonable travel agent would not have made. *Id.* at 51, 451 *A.*2d 203.

The court in *Rodriguez v. Cardona Travel Bureau,* 216 *N.J.Super.* 226, 229, 523 *A.*2d 281 (1986) relied on *Josephs* and held a travel agent liable in his position as a fiduciary, thereby owing the plaintiff-traveler "the highest duty" and requiring the "exercise of good faith and reasonable skill, care, and diligence in the execution of the commission." The plaintiff and her four children purchased round trip tickets to Puerto Rico through defendant, who, as their travel agent, chose a chartered flight and took a 5% commission. *Id.* at 227, 523 *A.*2d 281. As the plaintiff and her children arrived at the airport for their return flight, she discovered that the airline had become insolvent and closed its doors, forcing her to purchase new tickets with a different airline. *Id.* at 227, 523 *A.*2d 281. The court held that the defendant's receipt and benefit of a commission "gave rise to a legal duty owed by the travel agent to the traveler." *Id.* at 228, 523 *A.*2d 281 (citing *Josephs, supra,* 186 *N.J.Super.* at 51, 451 *A.*2d 203). Further, the court emphasized that the plaintiff relied on the defendant and his services for the particular purpose of obtaining round-trip tickets. *Id.* at 227, 523 *A.*2d 281. Consequently, the defendant was "free to select the airline which he thought would best suit his principal's requirements," yet he failed to warn her of the increased risks involved with charter flights, nor did he advise her to obtain travel insurance. *Id.* at 228, 523 *A.*2d 281 ("The consequence is that the agent subjected the principal to the risks of a charter carrier, rather than a scheduled air carrier, without an explanation of the hazards.") In sum, the court held:

> [T]ravel agents are required to have the degree and skill and knowledge requisite to the calling.... [T]he law holds a travel agent to the exercise of good faith and reasonable skill, care, and diligence in the execution of the commission.... If the agent neglects to procure travel arrangements, or if the arrangements fail in a manner which the travel agent should have foreseen but didn't as a

result of his or her failure to exercise the requisite skill or diligence, the agent becomes liable for the loss sustained thereby.

[*Id.* at 229–30, 523 *A.*2d 281.]

In *Schwartz, supra,* 639 *F.Supp.*2d at 469, the court granted the travel agent-defendants' summary judgment motion, and stated, "An agent is liable in tort to a third party for his or her own tortuous conduct—and his or her own tortuous conduct only. The agent is not 'subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of 'respondent inferior.' " Where the plaintiff suffered a slip-and-fall injury in a Hilton bathroom while vacationing in Greece, the court found that the Hilton Hotel Corporation ("HHC") and Hilton HHonors Worldwide ("HHR"), a wholly owned subsidiary of HHC, were not liable. *Id.* at 469. First, the court found that, based the various wholly owned Hilton corporations that owned the others, HHC and HHR did not "own, operate, manage, maintain or control" the Greece premises. *Id.* at 469, 472. Secondly, and more relevant for this section, the court found that HHR was not liable, even in its alleged position as a travel agent through the HHonors program, through which the plaintiff booked her trip. *Id.* at 473–74. It noted that, had HHR and HHC been acting as travel agents, they would have owed a duty, but "[e]ven assuming that, . . . the injury that she suffered—a slip and fall as a result of an allegedly defective shower—was not reasonably foreseeable from the perspective of a travel agent." *Id.* at 474. Thus, the court, consistent with *Josephs* and *Rodriguez,* acknowledged an independent travel agent duty, but only the court in *Josephs* found that the travel agent acted negligently.

 A plaintiff alleging a deviation from the standard of care that a travel agency must exercise in its due diligence is usually set forth by an expert report. The test for the need of an expert report is "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form valid judgment as to whether the conduct of the party was reasonable." *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982). Due diligence standards for investigating and hiring an

independent contractor to provide ground services for travelers in foreign countries is not "common knowledge." *Angel v. Rand Express Lines, Inc.,* 66 *N.J.Super.* 77, 85, 168 *A.2d* 423 (App.Div. 1961). These standards are "outside the usual lay sphere." *State v. Kelly,* 97 *N.J.* 178, 209, 478 *A.2d* 364 (1984).

### B. Other Jurisdictions

An agent or operator may rely on the general reputation of the supplier, however, there is no duty to make specific inquiries into guest safety or security. *See Wilson, supra,* 874 *F.*2d at 391. This is especially so if there has been a general inquiry in which no reports of similar incidents have been received. *See Fling, supra,* 765 *F.Supp.* at 1305–07. Travel agents have no duty to warn tour participants of dangers unless they have specific, actual knowledge of previous incidents. *See Wilson, supra,* 874 *F.*2d at 390; *Stafford, supra,* 841 *F.Supp.* at 288; *Manahan v. Yacht Haven Hotel,* 821 *F.Supp.* 1110, 1114 (D.Virgin Islands 1992); *Fling, supra,* 765 *F.Supp.* at 1305–06, 1307–08.

Club ABC began using STI approximately one year prior to Slotnick's trip, and there is no evidence that Club ABC had knowledge of any problems or complaints regarding STI or T3 or their employees. Further, Slotnick's alleged incident occurred while exiting a cave during the excursion offered by a local tour guide which was not part of the tour package offered and sold by Club ABC. This is not the type of incident that Club ABC should have foreseen but failed to by neglecting the duty owed to Slotnick. *Schwartz, supra,* 639 *F.Supp.*2d at 469. *Compare Sacks, supra,* 263 *N.Y.S.*2d at 255–56 (holding that travel agent liability was properly avoided because travel agent could not foresee harmful acts caused by independent service provider), with *Josephs, supra,* 186 *N.J.Super.* at 51, 451 *A.2d* 203 (finding travel agent liable because reasonable travel agent should have foreseen independent supplier's substandard service and avoided making the recommendation).

To prevail in this case, Slotnick must show that Club ABC had knowledge of previous accidents during tours provided by STI, T3 and their employees or that Club ABC knew that STI was somehow incompetent and used its services anyway. *See Wilson, supra,* 874 *F.*2d at 390, n. 8; *Schwartz, supra,* 639 *F.Supp.*2d at 469; *Rodriguez, supra,* 216 *N.J.Super.* at 229, 523 *A.*2d 281. Here, there is no evidence that Club ABC received any complaints regarding STI's safety. Thus, there can be no liability against them on a negligent selection/failure to warn theory.[6]

Likewise, there is no evidence that STI had knowledge of complaints about T3 or its tour guides offering trips to purported family caves of the local guides. Without this basic knowledge, STI could not have known that any such offerings could be hazardous. Slotnick does not specifically allege that STI was negligent in its selection of T3 as the independent contractor on the ground services in Jordan. Therefore, Slotnick cannot now advance such a claim.

Moreover, the facts demonstrate the due diligence that STI conducted prior to engaging T3 as an independent contractor providing ground services in Jordan. This included positive recommendations from Mr. Baher Ghabbour, STI Chairman, communications with the Jordanian tourist board, and speaking with the owner of T3. Also, it is significant that T3 chose its own tour

---

[6] The court notes that the parties dispute the extent of Club ABC's role in the trip. Club ABC asserts that it was merely a travel agent who essentially hired STI as a tour operator. STI asserts that Club ABC played a more active role and designed the itinerary. Slotnick asserts that Club ABC has not been able to prove that it did not in fact own, operate, and control the bus, tour guides, etc. on the trip beyond its own "self-serving assertions." The court finds that a fair reading of the record demonstrates that Club ABC was a travel agent or tour operator, and not the owner or operator of the tour guides company, bus company, or any other tour service utilized. With respect to any differences between the duty owed by travel agents and tour operators, the court finds the resulting duties to be the same. Both travel agents and tour operators owe a duty to their customers to act reasonably; there is no duty to make specific inquiries, and a plaintiff would have to show that travel agents and tour operators had specific knowledge of complaints or incidents.

guides. Further, Slotnick has not served an expert report that sets forth the standard of care that STI should have exercised in its due diligence of T3 and any alleged deviation therefrom.

### Conclusion

For the foregoing reasons, Club ABC's and STI's Motions for Summary Judgment are granted.